IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHERYL M. HOLMES, Individually and
on behalf of all others similarly situated,

            Plaintiff,

v.                                                          CV 19-0387 JHR/SCY

FARMERS GROUP, INC., FARMERS
INSURANCE EXCHANGE, FARMERS
INSURANCE COMPANY OF ARIZONA,
and MID-CENTURY INSURANCE
COMPANY,

            Defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

THIS MATTER comes before the Court on Plaintiff Cheryl M. Holmes' Motion for Class Certification [Doc. 59], filed on August 24, 2020. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter, including entering final judgment. [Doc. 12]. Having thoroughly reviewed the parties' submissions and the applicable law, held a motion hearing on June 3, 2021 [Doc. 80], and being otherwise fully advised, the Court denies the Motion.

    **I.**    **BACKGROUND**

Holmes had an automobile insurance policy with Farmers Insurance Company of America ("FICA"). [Doc. 16, p. 3]. Holmes paid an additional premium for "loss of use" coverage providing $50 per day up to $1,000 while the insured vehicle is in a garage for repairs and $1,000 if the vehicle is a total loss. [*Id.*].[1]

---

[1] Loss of use coverage is provided at various levels: K-1 provides $10 per day up to a maximum of $100, K-2 provides $15 per day up to a maximum of $300, K-4 provides $25 per day up to a maximum of $500, and K-5 provides $50

1

Holmes was involved in a collision on or about February 2, 2015. [Doc. 16, p. 7]. Holmes notified FICA on February 11, 2015 and FICA opened a claim. [*Id.*; Doc. 66, Exhibit ("Ex.") 3, p. 7; *see* Doc. 66, Ex. 8, pp. 69-73]. Claim Representative Sherri Garner explained to Holmes her coverage and set up an inspection appointment. [Doc. 66, Ex. 3, p. 7; *see* Doc. 66, Ex. 8, p. 73].[2] Garner inspected Holmes' vehicle and estimated the repair would take three days. [Doc. 66, Ex. 3, p. 7]. Holmes told Garner that she would make her claim through the other driver's insurance instead. [Doc. 66, Ex. 8, pp. 71, 73]. Garner sent a letter to Holmes confirming closure of the claim with FICA [*Id.*, p. 68], and the third-party insurer handled Holmes' repair from that point forward, including payment for 17 days car rental. [Doc. 66, Ex. 3, p. 8].

Holmes ultimately settled with the third-party insurer for the policy limit of $10,000. [Doc. 66, Ex. 3, p. 8]. Holmes then made an underinsured motorist claim ("UIM") with FICA, which she settled for $15,000. [*Id.*, pp. 8-9]. As a condition of her UIM settlement, Holmes executed a release of claims against FICA. [*Id.*, p. 9].

Subsequently, Holmes commenced this case on behalf of herself and all other similarly situated persons claiming entitlement to unpaid loss of use coverage. [Doc. 1, Ex. 4, p. 1].[3] Holmes listed four causes of action: breach of contract, violation of the New Mexico Unfair Practices Act, violation of the New Mexico Insurance Code, and unjust enrichment. [Doc. 1, Ex. 4, pp. 13-16]. After discovery, Holmes filed the Motion for Class Certification currently before the Court,

---

per day up to a maximum of $1,000 while the insured's vehicle is in a garage for repairs. [Doc. 61, Exhibit ("Ex.") 1, p. 9]. This coverage pays the maximum amount allowed (100/300/500/1,000) if the vehicle is a total loss. [*Id.*].

[2] Holmes claims that she has no recollection of this conversation nor any other conversation with any FICA representative. [Doc. 66, Ex. 3, p. 7, n. 5].

[3] Holmes initially filed against five related insurance providers: Farmers Group, Inc. ("FGI"); Farmers Insurance Exchange ("FIE"); Farmers Insurance Company, Inc. ("FICO"); FICA; and Mid-Century Insurance Company ("Mid-Century"). [Doc. 1, Ex. 4, p. 1]. The parties stipulated and agreed to the dismissal of claims against FICO without prejudice and without costs. [Doc. 13, p. 1].

specifying that Defendant misconstrues controlling contract provisions and fails to properly evaluate loss of use claims. [Doc. 59, pp. 12-14]. She also contends that Defendant improperly applies restrictions on rental reimbursement to deny the independent coverage for loss of use. [Doc. 61, Ex. 1, pp. 13-14].

Holmes seeks to certify the following class:

All individuals:
(1) who have or had an automobile covered by an insurance contract with [FICA] underwritten in New Mexico which included [Loss of Use] Coverage;
(2) who suffered a collision or loss after February 1, 2013 related to an automobile covered by that insurance contract, that (a) exceeds the applicable deductible amount under Part IV of the insurance contract, and (b) resulted in either (i) a total loss of the vehicle, or (ii) the vehicle being in the custody of a garage for repair;
(3) for whom a collision or comprehensive claim was opened by Farmers related to such loss or collision;
(4) for whom an estimate was documented in the claim file and
(5) who received no [Loss of Use] Coverage benefits.

[Doc. 58, Ex. 1, p. 1].[4] In short, and subject to contract interpretation and application, Holmes' proposed definition appears to describe a group of insureds with a plausible claim for unpaid benefits.

Defendant responded to the motion for class certification on October 8, 2021 [Doc. 65], Holmes replied on November 9, 2020 [Doc. 70], and the Court held a motion hearing on June 3, 2021. [Doc. 80].

**II.   GOVERNING LAW AND ANALYSIS**

To merit class certification, the movant must first demonstrate that the proposed class satisfies all Rule 23(a) requirements. Fed. R. Civ. P. 23(a); *Wal-Mart Stores, Inc. v. Dukes*, 564

---

[4] Holmes produced the above class definition in response to Court's order, which ordered Holmes to clarify what class she is seeking to certify. [*See* Doc. 58]. The Court relied on the above class definition in resolving Defendant's Motion to Compel. [*Id.*].

U.S. 338, 345 (2011). Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b). Fed. R. Civ. P. 23(b); *Wal-Mart*, 564 U.S. at 345.

Rule 23(a) requires a showing that

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A party seeking class certification must affirmatively demonstrate compliance with Rule 23 and that certification is proper. *Wal-Mart*, 564 U.S. at 350-51. Certification is only available if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *Id.*; *see Menocal v. GEO Group, Inc.*, 882 F.3d 905, 913 (10th Cir. 2018).

### a. Numerosity

Numerosity is not just a question of numbers. *See Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1215 (10th Cir. 2014). Rather, there are a several factors to consider including the nature of the action, the size of the individual claims, and the location of the members of the class. *Id.*

Holmes relies entirely on the estimates of FIE's Strategy and Process Consultant, Sylvia Ting, to show the required numerosity. [*See* Doc. 61, Ex. 1, pp. 20-21; Doc. 70, pp. 20-22]. Those estimates, however, do not completely fit the proposed class. Ms. Ting estimated there exist 4,925 claims that were (a) made under a policy issued by FIE, FICA, or Mid-Century, (b) with a date of loss on or after February 1, 2013, (c) with loss of use coverage, and (d) that had a payment under comprehensive or collision coverage and did not have a payment under loss of use coverage. [Doc. 1, Ex. 5, p. 2]. Ms. Ting estimated that an additional 7,609 claims had the same (a), (b) and (c) criteria but did not have a payment under comprehensive or collision coverage and did not have a

payment under loss of use coverage. [*Id.*, p. 3]. As Defendant points out, Ms. Ting's estimates are overbroad: they encompass individuals insured by three entities while the proposed class encompasses only individuals insured by FICA. [Doc. 66, Ex. 3, p. 38]. Ms. Ting's estimates also do not identity whether a collision or comprehensive claim was opened, nor whether the claim included a documented estimate. [*Cf.* Doc. 58, Ex. 1, p. 1; Doc. 1, Ex. 5, pp. 2-3].

A plaintiff seeking to represent a class bears the burden to establish numerosity and must offer some evidence of established, ascertainable numbers constituting the class. *Colo. Cross Disability Coal.*, 765 F.3d at 1215. Holmes presents no method to derive the number of actual class members from Ms. Ting's estimates. Without more, the Court could only guess, and guessing is not a component of a rigorous analysis. *See Koehler v. Freightquote.com, Inc.*, No. 12-cv-2505-DDC-GLR, 2015 WL 4203962, at *34 (D. Kan. July 10, 2015). Under a rigorous analysis, Ms. Ting's estimates alone are insufficient to establish any reliable or even estimated quantity for the proposed class. While the Tenth Circuit has said that the numerosity requirement is not merely a question of numbers, Holmes does not even mention the other factors the Tenth Circuit has identified, i.e., the nature of the action, the size of the individual claims, and the location of the members of the class.[5] *See Colo. Cross Disability Coal.*, 765 F.3d at 1215.

Holmes speculates that a reasonable estimate of the class size is at least hundreds based on the sample files provided during discovery along with the Rule 30(b)(6) evidence but identifies no specific substantiation for her conclusion. [*See* Doc. 70, p. 22]. However, the numerosity determination may not be based on mere speculation, and unsubstantiated assertions and speculative beliefs are insufficient to demonstrate numerosity. *Woodard v. Fidelity Nat. Title Ins. Co.*, No. CIV 06-1170 RB/WDS, 2008 WL 5737364, at *2, 8 (D.N.M. Dec. 8, 2008).

---

[5] The Court takes judicial notice of the location of this action and weighs it against impracticability since all class members have or had an automobile covered by an insurance contract underwritten in New Mexico.

Holmes fails to meet her burden to show a class so numerous that joinder of all members is impracticable.

### b. Commonality

Commonality requires the movant to demonstrate that the class members' claims depend upon a common contention, and that common contention must be of such a nature that determination of its truth or falsity will resolve an issue central to the validity of each of the claims in one stroke. *Wal-Mart*, 564 U.S. at 350.

Holmes argues that these contentions are common to the class:

1. How to construe Defendant's loss of use endorsement, i.e., whether the eligibility of loss of use benefits depends only on conditions disclosed in the endorsement or there are additional requirements not disclosed within that plain language, for example, whether the eligibility depends on whether the insured specifically requested loss of use payment, whether Defendant made a separate payment to the insured, or whether the insured forfeited the loss of use endorsement if it pursued a separate claim against a third-party insurer? [Doc. 61, Ex. 1, pp. 22-23; Doc. 70, pp. 16-17, 22].
2. Whether, under New Mexico law, Defendant had a duty to inform its insured of all available coverages including loss of use coverage? [Doc. 66, Ex. 1, p. 23].
3. Whether, under New Mexico law, an insured must make an itemized request for a specific coverage/benefit rather than simply initiating a claim before the insured is entitled to that specific coverage/benefit? [*Id.*].
4. Whether Farmers systematically treats loss of use coverage as rental reimbursement? [*Id.*].
5. Whether loss of use coverage benefits are available if the insured chooses to utilize a third-party carrier to handle other aspects of their property loss such as rental reimbursement? [*Id.*].
6. Whether Defendant's actions and omissions constitute a breach of contract? [*Id.*].
7. Whether Defendant's actions and omissions constitute unjust enrichment? [*Id.*].
8. Whether prejudgment interest is applicable in the context of failure to pay the enumerated benefits under the loss of use coverage endorsement? [*Id.*].

*Wal-Mart* provides several examples of contentions that do not satisfy commonality, *e.g.*: "Is that an unlawful employment practice? What remedies should we get? Reciting these questions is not sufficient to obtain class certification." 564 U.S. at 349. Holmes contentions 6, 7 and 8 ask

about Defendant's general actions and omissions and prejudgment interest. [Doc. 66, Ex. 1, p. 23]. They are of the type *Wal-Mart* explicitly found insufficient to satisfy the commonality requirement. *See Wal-Mart*, 564 U.S. at 349; *see also Anderson Living Trust v. WPX Energy Production, LLC*, 306 F.R.D. 312, 439 (D.N.M. 2015).

Regarding contention 4, whether loss of use was treated as rental reimbursement, and contention 5, use of third-party coverage, the class definition does not distinguish between individuals who pursued and did not pursue third-party claims[6], or individuals who were denied loss of use benefits because of rental reimbursement restrictions and those who were not. [*See* Doc. 58, Ex. 1, p. 1]. The class definition is broad enough to cover all four groups. Neither party provided evidence regarding how many class members fall within the individual categories. Therefore, the Court does not know if these contentions reach just one, some, or most of the class. *See O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 741-42 (5th Cir. 2003) (Contentions affecting most of the class may satisfy Rule 23(a) commonality requirement). If the class contained two partial subclasses, one each for member whose denials of benefits were based on application of rental reimbursement restrictions and the other based on filing third-party claims, then contentions 4 and 5 would, respectively, state common issues for each of those subclasses. But no party has proposed subclasses or argued for their creation. Potentially, both contentions may help substantiate a theory of misrepresentation as a violation of the Unfair Trade Practices Act or Insurance Code. Because this is a close issue, and the Court denies this Motion on other grounds, the Court does not discuss these two contentions further.

Regarding contention 2, duty to inform, and 3, itemized requests, Defendant concedes that it has a general duty to inform and that itemized requests by insureds for a specific benefit are not

---

[6] The parties dispute whether individuals who pursued only third-party claims are even members of the class. [*See* Doc. 66, Ex. 3, pp. 40-41].

needed. [Doc. 66, Ex. 3, pp. 25-26]. However, there is conflicting authority on whether conceded issues categorically satisfy commonality. *Cf. Payne v. Tri-State CareFlight, LLC*, 332 F.R.D. 611, 693 (D.N.M. 2019) ("The [c]ourt has previously noted that an undisputed issue is an incidental issue and not a central issue that establishes commonality"); *Hicks v. State Farm Fire and Casualty Co.*, 965 F.3d 452, 458 (6th Cir. 2020) ("[c]ommonality . . . is not undermined when a party concedes an issue"). Because these two contentions are not fully developed, and the Court denies relief based on other grounds, the Court does not discuss these two contentions further.

Regarding contention 1, construction of the loss of use endorsement, courts generally find that claims arising from materially similar contracts satisfy the commonality requirement when the court can resolve a central issue by analyzing common provisions. *See e.g. Daye v. Community Financial Service Centers, LLC*, 313 F.R.D. 147, 176-77 (D.N.M. 2016); *Kolbe v. BAC Home Loans Servicing, LP*, 738 F.3d 432, 444 (1st Cir. 2013). It is normal for providers to interpret certain standard provisions in a standard way and courts are generally tasked with analyzing those interpretations. *See e.g. Kolbe*, 738 F.3d at 444 (contractor interprets "any hazards" as including flood, and the court is tasked with interpreting "any hazards"); *Zeno v. Ford Motor Co., Inc.*, 238 F.R.D. 173, 185 (W.D. Penn. 2006) (contractor interprets "towing or cooling options" as not necessarily requiring upgraded radiator, and the court is tasked with interpreting "towing or cooling options."). Here, the parties do not dispute that the loss of use endorsements are materially similar across class members. [*See* Doc. 16, p. 2; *see generally* Doc. 66, Ex. 3]. Holmes contends that loss of use benefits should be paid whenever the plain meaning of the endorsement is satisfied. [Doc. 70, pp. 16-17, 22].

As *Wal-Mart* noted, the class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. 464 U.S. at 348. In the types of

cases where claims include elements of systematic malfeasance, such as employment discrimination claims, Justice Scalia illustrated the problems of proof of commonality (and typicality) by recalling a discussion from an earlier employment discrimination case:

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion [or higher pay] on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*Id.* at 353-54 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157-58 (1982)). Here, there is a similar conceptual gap between (a) Holmes' claim that she was improperly denied loss of use benefits, and her otherwise unsupported allegation that Defendant generally misinterprets the loss of use endorsement or imposes inapplicable restrictions to deny valid claims, and (b) the existence of a class of persons who have suffered the same injury, such that the claims of Holmes and the class will share common questions of law or fact.

*Wal-Mart* followed *Falcon* by positing methods by which the employment discrimination plaintiff could bridge the gap. *Id.*, at 353. First, proof of a "biased testing procedure to evaluate both applicants and incumbent employees [could support] a class action on behalf of every applicant or employee who might have been prejudiced by the test." *Id.* (quoting *Falcon*, 457 U.S. at 159, n. 15) (bracketed language supplied). Alternatively, "significant proof [of] a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through an entirely subjective discrimination process." *Id.*

Applying *Wal-Mart*, Holmes needs to show evidence of a commonality in the claims of class members that presents common questions of law or fact. She proposes that Defendant has a policy of misinterpreting the coverage requirements for loss of use benefits, but she has not

9

presented evidence of such a policy either in written form or as part of corporate training or culture. [*See* Doc. 61, Ex. 1, pp. 6-7; Doc. 70, pp. 16-17]. She proposes that Defendant as a matter of practice avoids informing insureds of their right to loss of use coverage (notwithstanding their payment of a separate premium) but, when Defendant's claims adjuster testified that she explained Holmes right to loss of use coverage upon opening her clam, Holmes failed to rebut the testimony and merely said she didn't recall, nor has she identified a single other company representative nor insured who can testify to the practice. [Doc. 66, Ex. 3, pp. 7-8; *See also* Doc. 66, Ex. 3, p. 7, n. 5]. She proposes that Defendant denies otherwise valid loss of use claims if insureds pursue third-party claims, but she has not shown instances of the same nor any company-wide direction to do so, either formal or informal; in her own case, she does not deny that she told her claims adjuster that she would pursue a third-party insurance claim and never communicated again with FICA about loss of use coverage until commencing this lawsuit. [Doc. 66, Ex. 8, p. 68; *see* Doc. 66, Ex. 3, pp. 7-8]. She proposes that Defendant applied rental reimbursement restrictions to loss of use coverage but has shown no specific instance. [*See* Doc. 61, Ex. 1, pp. 6-8]. Defendant's primary theories, aside from the affirmative defense based on release, are that Holmes (1) abandoned her claim and (2) was not entitled to loss of use benefits because, after settlement of her third-party claim and her uninsured motorist claim, she no longer met the loss requirement for the benefit.

What is left is Holmes' argument that Defendant is just wrong to interpret the loss of use endorsement as they do in her case: to apply other recoveries to reduce the amount of an insured's "loss" to determine if the loss of use requirements are met.[7] Holmes asks the Court to find that Defendant's interpretation conflicts with the endorsement's plain meaning. [Doc. 70, pp. 16-17,

---

[7] It is not unusual for class actions involving form contracts to present issues of the breadth of coverage across a class of insureds who might be eligible under different interpretations of the forms. *See generally Kolbe*, 738 F.3d at 444; *Zeno*, 238 F.R.D. at 185.

10

22]. She could show that this is a common issue across the class in either of two ways: by presenting specific instances other than her own where Defendant denied loss of use coverage after other recoveries were applied to reduce the "loss", or by showing a company policy or direction to do so. She has not met her burden.

The trial court must determine, after a rigorous analysis, whether the prerequisites of Rule 23(a) have been satisfied. *Wal-Mart*, 564 U.S. at 350-51. Frequently that rigorous analysis will entail some overlap with the merits of plaintiffs' underlying claim. *Id.* at 351. Even though a question of whether Defendant has a general policy of not interpreting certain provisions based on plain meaning is a merits issue, the scope of proof of commonality necessarily overlaps. *Id.* at 352. Holmes does not present specific instances where Defendant denied loss of use coverage because other recoveries were applied; instead she makes the conclusory claim that loss of use benefits should be paid whenever the plain meaning of the endorsement is satisfied, without presenting any evidence, let alone significant evidence, that Defendant generally failed to interpret the loss of use endorsement based on its plain meaning.[8] Defendant argues that, by amending the class definition after discovery, Holmes effectively excluded "many thousands of insureds who had already received a full or partial K-Coverage payment", providing a weighty counterpoint to a hypothesis of systematic denial. [Doc. 66, Ex. 3, p. 6].

It is Holmes' burden to show that common questions of law or fact, material to her claims, actually exist; a statement of issues that may exist is not sufficient. The best that she has done is to elicit, in this briefing, a statement by Defendant that, had she not apparently abandoned her own

---

[8] The only potentially relevant evidence Holmes provided is a 1-page training handout on "Insurance Jargon" that instructs claims personnel to say "Rental coverage" rather than "K coverage", just as it recommends "Insured vehicle" over "MD" and "Local adjuster" over "FCR". [Doc. 61, Ex. 3, p. 58; *see* Doc 61, Ex. 1, pp. 12-13]. Holmes' other evidence, "Holmes 1391", is not relevant since Holmes 1391 relates to loss of use coverage for claimants (third-party) instead of insureds. [*See* Doc 51, Ex. 3, pp. 59-60].

claim for loss of use coverage, and had she not possibly waived it in exchange for settlement of her underinsured motorist claim, she still would not qualify because her other recoveries for this collision were applied to reduce her qualifying "loss." That statement supports Holmes' individual claim that she and Defendant interpret the loss of use endorsement differently but does not substantiate a common claim shared by any other members of the proposed class.

### c. Typicality

It is a *non sequitur* to say that Holmes' claims may be typical of the common claims in the case when the Court has already concluded that she has identified no proposed class member with a claim like hers. Typicality is one of the requirements of Rule 23(a), however, and so will be explored.

A plaintiff's claims are typical of the claims of the class when the claims of the class representative and class members are based on the same legal or remedial theory. *Menocal*, 882 F.3d at 917. However, a proposed class representative is not typical if the representative is subject to a unique defense that is likely to become a major focus of the litigation. *Payne*, 332 F.R.D. at 661 (citing *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 687 (D. Colo. 2014), which quoted *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 599 (3d Cir. 2012)); *see Maher v. Solomon*, Civ. No. 06-714 JAP/LFG, 2008 WL 11413512, at *1, n. 2 (D.N.M. Feb. 1, 2008). Assuming for argument's sake that Holmes had demonstrated that the class shares her four claims in common, it is clear that her own claim will have to run an affirmative defense gauntlet that is atypical to the class.

After opening a claim with Defendant, Holmes chose instead to pursue recovery through third-party insurance and the third-party insurer handled Holmes' car repair, including payment for 17 days of car rental. [Doc. 66, Ex. 3, p. 8; *see* Doc. 66, Ex. 8, pp. 68, 71, 73]. Because the third-party insurer did not satisfy her entire claim, Holmes then made an underinsured motorist

claim with Defendant. She eventually settled her underinsured motorist claim and, as part of that settlement, executed a release of claims against Defendant. [Doc. 66, Ex. 3, p. 9]. Defendant has given notice, [*see Transcript of Certification Hearing,* Doc. 80, p. 55], that it will litigate whether Holmes is entitled to any recovery, even if she once qualified, now that (1) her two insurance settlements have reduced her loss below the threshold for loss of use coverage, and (2) she gave up her claims against Defendant as consideration for her second settlement. [Doc. 66, Ex.3, pp. 40-41]. Holmes has made no showing that other class members face those affirmative defenses.

The policy behind the unique defense exception is that there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it. *Payne*, 332 F.R.D. at 661; *Maher*, 2008 WL 11413512, at *1, n. 2. Courts have analyzed unique defenses under both the typicality and the adequate representation requirement. *See generally Borum v. Brentwood Associates, L.P.*, 329 F.R.D. 90 (D.D.C. 2019).

### d. Adequate Representation

A plaintiff will fairly and adequately protect the interests of a class when the named plaintiff does not have interests antagonistic to those of the class, and the named plaintiff and its counsel will pursue the action vigorously on behalf of the class. *Maher*, 2008 WL 11413512, at *4 (citing *Rutter & Willbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002)).

Defendant only challenges Holmes' adequacy to the extent that Holmes has a conflict of interest with the class. [Doc. 66, Ex. 3, pp. 39-42]. The adequacy inquiry serves to uncover conflicts of interests between named parties and the class they seek to represent. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-26 (1997). A class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *Id.* Courts typically reject as inadequate proposed class representatives who are the subject of unique defenses

directly linked to the claims asserted in the class action because the proposed representatives would have to devote at least some of their litigation efforts to defeating those defenses, disadvantaging the members of the class not subject to them. *See Borum*, 329 F.R.D. at 99; *see also Maher*, 2008 WL 11413512, at *1, n. 2. Even in cases where unique defenses do not have any direct link to the class action lawsuit, courts still sometimes find the named representatives inadequate if unique defenses are likely to occupy the named plaintiffs' time and energy, diverting at least some resources away from the litigation. *See Borum*, 329 F.R.D. at 100.

Citing *Nitsch* and *Maher*, Holmes argues that an affirmative defense ordinarily would not defeat typicality because typicality does not focus on defenses against the plaintiff representative and the proposed plaintiff class. [Doc. 70, p. 24]. However, Holmes omitted the caveats explicitly stated in *Nitsch* and *Maher*: affirmative defenses may bar typicality where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation. *Maher*, 2008 WL 11413512, at *1, n. 2; *Nitsch v. Dreamworks Animation SKG, Inc.*, 315 F.R.D. 270, 284 (N.D. Cal. 2016).

Because of the dispositive nature of the affirmative defenses against Holmes, due to the unique facts of her individual case, the Court finds that Holmes is not typical of the class and her service as representative Plaintiff would delay the case and divert class resources to the detriment of the class.

### III.  CONCLUSION AND ORDER

Holmes has not proven that the proposed class satisfies all requirements of Rule 23(a). Therefore, the Court **denies** certification. *See Wal-Mart*, 564 U.S. at 350. The parties and their counsel are ordered to meet and confer within fourteen (14) days and then submit a joint status

report clarifying how they wish to proceed in light of the Court's rulings, within thirty (30) days of entry of this Order.

**IT IS SO ORDERED.**

JERRY H. RITTER
U.S. MAGISTRATE JUDGE
*Presiding by Consent*